## TRIPE v. MARCY.

The possession of the mortgagor will not, ordinarily, be regarded as adverse, without some unequivocal act, hostile to the mortgagee's title, and distinctly brought to his knowledge, or the possession becomes a disseizin by the election of the mortgagee.

In this respect the assignee of the equity of redemption, with notice of the mortgage, stands like the mortgagor, and the registry of the mortgage, being in the line of the assignee's title, is constructive notice to him.

Neither the mortgagor nor his assignee, with such constructive notice, can be regarded as holding the land under a supposed legal title, within the meaning of the law relating to betterments.

WRIT OF ENTRY, in which the plaintiff counted upon a mortgage, alleged to have been given to her by Thomas Hanscom, on the 31st day of May, 1834, of a certain piece of land in Portsmouth, being part of a ship-yard. The writ was dated May 27, 1857, and served on the 31st day of August following. Plea—the general issue, with a brief statement of the statute of limitations, and of a claim for betterments.

It appeared that the demandant was the owner of the premises on the 31st day of May, 1834, and on that day conveyed the same to Thomas Hanscom, who, on the same day, mortgaged them back to the demandant, to secure the payment of a note of the same date, given by him to her for $150, and payable to her, or order, in five years from date, with interest. The mortgage was recorded on the 12th day of August, 1834. The note and mortgage were produced upon the trial, by the plaintiff, and their execution admitted. Thomas Hanscom died soon after this mortgage was given, and his widow, Abigail S. Hanscom, as administratrix on his estate, by virtue of a license from the judge of probate, duly granted, in consideration of $12, sold and conveyed to John Mugridge, on the 6th

day of April, 1835, all the right, title and interest which
Thomas Hanscom had in the premises at the time of his
decease; and on the same day she also conveyed to said
Mugridge all her right of dower in the premises. On the
same 6th day of April, 1835, Mugridge mortgaged the
premises by deed, with the usual covenants of warranty,
to Lewis Barnes, and on the 16th day of February, 1839,
he conveyed to said Barnes, by quitclaim deed, all his
right to the same. Barnes subsequently died, leaving his
wife, Abby M. Barnes, executrix of his will, who, by vir-
tue of a power in the will, on the 16th day of January,
1857, conveyed the land to the defendants. These several
conveyances were all duly executed and recorded. From
the 6th day of April, 1835, the time of the conveyance by
Abigail S. Hanscom to Mugridge, up to the commence-
ment of this suit, the premises were successively in the
sole possession of Mugridge, Barnes and the defendants;
and after the conveyance to the defendants they made
some improvements thereon.

The plaintiff introduced evidence tending to show that,
some time in 1835, Barnes made an unsuccessful attempt
to make a tender to the plaintiff of the amount secured
by the mortgage, and that in 1843 he said that she would
have been better off to have taken the tender than to have
kept the land. There was evidence tending to show that
the note secured by the mortgage had been paid.

The defendants contended: 1. That the action was
barred by the statute of limitations; 2. That the evidence
was competent to show a title in them by adverse posses-
sion; 3. That if the plaintiff could maintain her action,
still, that the defendants were entitled to have the claim
allowed for betterments.

The court ruled otherwise, and instructed the jury that,
unless they found that the note secured by the mortgage
had been paid, they should return their verdict for the
plaintiff; to which the defendants excepted.

The jury returned a verdict for the plaintiff, and the defendants moved to set the same aside, and for a new trial, for supposed error in the ruling of the court.

*Hatch*, for the defendant.

1. It is a presumption of law that the note was long since paid. Comp. Stat., ch. 192, sec. 4; 1 Gr. Ev., sec. 16; 1 Story Eq. Jur. 73; *Bartlett* v. *Bartlett*, 9 N. H. 398; *Oswald* v. *Leigh*, 1 T. R. 270. In many cases, where the mortgagor has remained in possession for twenty years or upwards, without payment of interest, mortgages have been presumed to be satisfied. *Howland* v. *Shurtleff*, 2 Met. 26; *Gills* v. *Banymore*, 5 Johns. Ch. 552; *Collins* v. *Torrey*, 7 Johns. 278; *Jackson* v. *Pratt*, 10 Johns. 381; *Jackson* v. *Wood*, 12 Johns. 242; 2 Story Eq. Jur. 735, sec. 1520; 1 Gr. Ev., sec. 39, and note; 4 Kent Com. 189; Coote on Mortgages 449; *Dexter* v. *Arnold*, 3 Sum. 152.

2. The statute, indeed, gives a right of action upon the mortgage note, so long as any action may be maintained upon the mortgage itself; Comp. Stat., ch. 192, sec. 6; but by the first section of the same statute, "No action for the recovery of real estate shall be maintained unless brought within twenty years after the right first accrued to the plaintiff to commence an action for the recovery thereof." The right of the plaintiff to commence her action accrued at the date of her mortgage, May 31st, 1834. *Brown* v. *Cram*, 1 N. H. 169; *Pettengill* v. *Evans*, 5 N. H. 54; *Hobart* v. *Sanborn*, 13 N. H. 227; *Chellis* v. *Stearns*, 22 N. H. 312; *Furbush* v. *Goodwin*, 29 N. H. 321. In Great Britain the limitation act (3 and 4 Wm. 4, ch. 27, sec. 2.,) enacts that "no person shall bring an action to recover any land but within twenty years next after the right to bring such action has accrued to him, or some person under whom he claims;" (See *Dean & Chapter of Ely* v. *Cash*, 15 M. & W. 617;) and by 7 Wm. 4, and 1 Vict., ch. 28, it is provided that it shall be lawful for any person, entitled

Tripe *v.* Marcy.

to or claiming under any mortgage of land, to make an entry, or bring an action to recover the land, at any time within twenty years next after the last payment of any part of the principal or interest, although more than twenty years may have elapsed since the time when the right to make the entry or bring the suit first accrued. (See Coote on Mortgages 449.) Under these statutes an action of ejectment was brought in the Exchequer, March 21, 1840, to recover lands which were mortgaged to the plaintiff, September 8th, 1819, to secure the payment of £200 on the 25th day of March, then next ensuing. The court held, unanimously, that the mortgagee was entitled to enter immediately upon the execution of the deed, and that the action was barred by the statute. *Doe d. dem Roylance* v. *Lightfoot*, 8 M. & W. 553.

3. The defendants and their grantors have held since April 6, 1835, under absolute deeds, one of which contains covenants of warranty. They must be presumed to have been in according to their title, and their possession to have been adverse, notwithstanding their title may have been defective; *Gage* v. *Gage*, 30 N. H. 420; *Bailey* v. *Curleton*, 12 N. H. 9; *Lund* v. *Parker*, 3 N. H. 49 and cases cited; and the presumption is conclusive; *Newmarket Manufacturing Company* v. *Pendergast*, 24 N. H. 54.

It is suggested in *Pettengill* v. *Evans*, 5 N. H. 57, that a mortgagor in possession may be regarded by the mortgagee as tenant at will, or as a trespasser, at his election. But this was said with reference to the remedy only, the action being trespass *quare clausum*. And in *Hobart* v. *Sanborn*, 13 N. H. 227, it was determined that the mortgagor in possession is not entitled to notice to quit; *Upham*, J., remarking that between him and the mortgagee " there is no privity, nor anything like the relation of landlord and tenant." He used precisely the language of the court in *Jackson* v. *Colden*, 4 Cow. 278. In Massachusetts, the idea that the mortgagor in possession is a tenant

at will of the mortgagee, so as to prevent the operation of the statute of limitations, or of the usual presumption of payment, is distinctly repudiated. *Howland* v. *Shurtleff,* 2 Met. 27.

4. If, upon any view of the case, the plaintiff is entitled to recover, the defendants should be allowed for their betterments. Comp. Stat., ch. 203, sec. 5; *Wendell* v. *Moulton*, 26 N. H. 41.

*W. H. Y. Hackett*, for the plaintiff.

1. As to the statute of limitations: The note intended to be secured by the mortgage was dated May 31, 1834, and payable to the plaintiff, or order, in five years, and became due June 3, 1839. The writ was dated May 27, and served August 31, 1857. The statute of course did not begin to run until June 3, 1839, and had run less than eighteen years when this action was commenced. 2 Met. 26.

2. We deny that, as against us, the defendants have ever held adverse possession. If they contend that their entry, under the deed, Hanscom, administratrix, April 6, 1835, and continued possession since, bars this suit, they are answered by the fact that this mortgage was recorded August 12, 1834, more than six months prior to Mugridge's purchase. Mugridge was bound, then, to know, and in point of fact did know, of the existence of the plaintiff's mortgage, and he entered under his own title, and not in derogation of the plaintiff's mortgage. His entry and possession were not adverse to, but compatible with, and in subordination to, the plaintiff's right. The result, then, is that the possession of Hanscom, having been commenced as subordinate to, and not in derogation of, the plaintiff's mortgage, must be held to have been so continued by him, and those claiming under him, until there is affirmative proof that its character was changed.

3. Neither the defendants nor any one under whom they

claim have ever had possession for six years, claiming title adverse to the plaintiff's mortgage.

4. The fifth section of chapter 203 of the Compiled Statutes, relative to betterments, does not apply to such a case as this.

BELLOWS, J. The case finds that the defendants and those under whom they claim, having the mortgagor's title, have been in possession of the mortgaged estate ever since April 6, 1835, a period of about twenty-two years next preceding the commencement of this suit; and one question which arises is, whether, on the evidence reported, the jury could have found this possession to be adverse.

The relation between the mortgagor and mortgagee is peculiar in its nature, and is, perhaps, best expressed by the use of those terms. Upon the execution of the mortgage the mortgagee is entitled to possession, unless restrained by some provision, expressed or implied, in the instrument of conveyance; but it would be contrary to all the analogies to contend that, immediately upon the conveyance, the mortgagor commences to hold adversely to the mortgagee; and this without any act hostile to the title which he has just conferred upon him, or notice of the adverse claim.

The mortgagee may doubtless treat the possession of the mortgagor as a disseizin, at his election, and may at once maintain a writ of entry for the recovery of the possession, without any notice to quit; but until such election the possession of the mortgagor cannot be regarded as a disseizin, but as permissive, and bearing, in many respects, a close analogy to a strict tenancy at will or at sufferance. Ang. on Lim. 489. Until this power of election is exercised, the mortgagor is in with the privity and assent of the mortgagee, and in subordination to his title; and it is therefore held that, upon the ground of such presumed

assent, the mortgagor is not liable to the mortgagee for the rents and profits while so in possession. *Chellis* v. *Stearns*, 22 N. H. 215; *Furbush* v. *Goodwin*, 29 N. H. 332. This, it will at once be perceived, is wholly inconsistent with the idea of an adverse occupation. The mortgagor, like the lessee, tenant in common, or trustee, may, however, give to his possession an adverse character by some unequivocal act, hostile to the title of the mortgagee, and distinctly brought to his knowledge. In such way he may terminate his holding as tenant or mortgagor, and actually disseize the mortgagee. But the act which is thus to change the character of the possession must be a clear, open and explicit denial of the mortgagee's title, and a refusal to hold under it, brought to the knowledge of the mortgagee; and until such actual disseizin by the act of the mortgagor, or by the election of the mortgagee, the possession is not adverse, but in privity with the mortgagee, and the statute of limitations does not begin to run.

These views, we think, are well established by the decided cases in both the English and American courts. Among them are *Hall* v. *Sutors*, 5 B. & Ald. 687; *Trask* v. *Hunt*, 9 Exch. 14; *Partridge* v. *Bean*, 5 B. & Ald. 604, and note; 1 Smith's Leading Cases 679, 660; *Keach* v. *Hall*, Doug. 21; *Dray* v. *Marshall*, Equity R. 373; *Gould* v. *Newman*, 6 Mass. 239; *Perkins* v. *Pitts*, 11 Mass. 125; *Wilder* v. *Houghton*, 1 Pick. 87; *Bacon* v. *McIntyre*, 8 Met. 86; Ang. on Lim. 486–490; *Jackson* v. *Longhead*, 2 Johns. 75; *Jackson* v. *Hopkins*, 18 Johns. 487; *Jackson* v. *Jackson*, 5 Cow. 174; *Noyes* v. *Sturdivant*, 6 Shep. 104; *Willison* v. *Watkins*, 3 Pet. 47; *Zeller's Lessee* v. *Eckert*, 4 How. 295; Tillinghast's Adams on Eject. 47, note; *Higginson* v. *Mein*, 4 Cranch 415; 2 Gr. Cruise 113, 114; Story's Eq. Jur., sec. 1028 (a), 1028 (b); 2 Hill. on Mort. 4–13; *Wells* v. *Morse*, 11 Vt. 9; *Hammond* v. *Hopkins*, 3 Yerg. 528; *Pettingill* v. *Evans*, 5 N. H. 54–59; *Southerin* v. *Mendum*, 5 N. H. 429; *Chellis* v. *Stearns*, 22 N. H. 215.

The counsel for the defendant, in the course of his able and ingenious argument, has referred us to the case of *Doe ex dem. Roylance* v. *Lightfoot*, 8 M. & W. 553, as a strong authority for his position; but that case is founded upon the peculiar provisions of the statute 3 & 4 Will. 4, ch. 27. Section 1 of this statute gives construction to certain terms used. Section 2 is as follows: "That after the 31st day of December, 1833, no person shall make an entry or distress, or bring an action to recover any land or rent, but within twenty years next after the time at which the right to make such entry or distress or to bring such action, shall have *first accrued* to some person through whom he claims; or if such right shall not have accrued to any person through whom he claims, then within twenty years next after the time at which the right to make such entry or distress or to bring such action shall have *first accrued* to the person making or bringing the same." Section 3 is a long one, making application of the terms "*first accrued,*" used in the 2d section, and among other cases is the following: "And when the person claiming such land or rent shall claim in respect of an estate or interest in possession, granted, appointed, or otherwise assured, by any instrument other than a will, to him or some person through whom he claims, by a person being, in respect of the same estate or interest, in the possession or receipt of the profits of the land or in the receipt of the rent, and no person entitled under such instrument shall have been in such possession or receipt, then such right shall be deemed to have first accrued at the time at which the person claiming as aforesaid, or the person through whom he claims, became entitled to such possession or receipt, by virtue of such instrument; and when the estate or interest claimed shall have been an estate or interest in reversion or remainder, or other future estate or interest, and no person shall have obtained the possession or receipt of the profits of such land, or the receipt of such rent in respect of such

estate or interest, then such right shall be deemed to have first accrued at the time at which such an estate or interest became an estate or interest in possession ; and when the person claiming such land or rent, or the person through whom he claims, shall have become entitled by reason of any forfeiture or breach of condition, then such right shall be deemed to have first accrued when such forfeiture was incurred or such condition was broken."

The object of this statute is clearly to avoid the numerous and difficult questions arising out of the doctrine of adverse possession, and to limit the time for making entry or distress, or bringing suit, to the period of twenty years, without regard to the question whether the possession was adverse or not.

The statute makes, indeed, a radical change in the English law of limitations. So it is held in the English courts. Ang. on Lim., Appendix, 24, and cases cited. In *Nepean* v. *Knight*, 2 M. & W. 895, Lord *Denman* says : " We are all of the opinion that the 2d and 3d sections of the statute 3 & 4 Will. 4, chapter 27, have done away with the doctrine of mere adverse possession, and, except in cases falling within the 15th section of the act, the question is, whether twenty years have elapsed since the right *first accrued,* whatever be the nature of the possession."

It is quite obvious, then, that *Doe d. Roylance* v. *Lightfoot* can have no bearing upon the case now before the court, inasmuch as the statute upon which it is founded clearly includes the case of mortgagors and mortgagees, without any regard to the question of adverse possession.

Our law of limitations accords in its general features with the English law of 21 James I., chapter 16, and under *that* the decisions of the English courts accord with the views we entertain.

In the present case, there was no evidence of actual disseizen, unless it be found in the conveyances to Barnes and the possession under that title. If, however, Barnes

had notice of the mortgage he would stand in no better situation than the mortgagor. 2 Hill. on Mort. 5, and cases cited; *Hughes* v. *Edmunds*, 9 Wheat. 497; Ang. on Lim. 486, note 3; *Newman* v. *Chapman*, 2 Rand. 93. Before the conveyance to Barnes the mortgage to the plaintiff was duly recorded, and this has been adjudged to be constructive notice. *Heyer* v. *Pruyn*, 7 Paige Ch. 469; *Hughes* v. *Edmunds*, 9 Wheat. 496. In the last case the mortgagor in possession recognized the mortgage, and promised to pay it, and afterwards conveyed some of the land to the other defendants, who entered and made improvements thereon, but the court held that these defendants were purchasers with notice, upon the ground that the mortgage was duly registered, and the court said that " though the notice was constructive, for every purpose essential to the protection of the mortgagee against the effect of these alienations, it is equivalent to a direct notice, and such is unquestionably the design of the registration laws of Kentucky."

This being the doctrine, the notice in this case was a conclusion of law, and there was no evidence on which the jury could find adverse possession, and the ruling of the court was therefore right.

The evidence tending to prove actual notice to Barnes, by his attempting to tender the amount of the mortgage debt to the plaintiff, and remarks made by him in 1843, not having been submitted to the jury on the question of notice, are laid out of the case.

The question whether the mortgage debt had been paid or not, was submitted to the jury, who found for the plaintiff, and as the defendant made no request for any special charge on that point, we are to presume that the jury were properly instructed. We have examined, however, a question that has been argued touching this point, and concur with the views of the counsel for the defendant to this extent; that when the mortgagor is permitted to retain

Tripe *v.* Marcy.

possession of the land for twenty years, without inter-
ruption, the presumption is that the mortgage debt has
been paid or had no valid existence, unless this pre-
sumption is repelled by the payment of interest, or other
act recognizing the validity of the mortgage. This, as
we conceive, is established on great authority. 2 Gr. Cruise
113, 114, 149; 2 Story Eq. Jur. 1028 *a*, 1028 *b*; 4 Kent Com.
189; *Trask* v. *White*, 3 Bro. C. C. 289, and note; Ang. on
Lim. 490, 491, 492; *Christophers* v. *Sparks*, 2 Jac. & W.;
*Jackson* v. *Ward*, 12 Johns. 242; *Hughes* v. *Edmunds*, 9
Wheat 497; *Giles* v. *Banman*, 5 Johns. Ch. 545; *Dexter* v.
*Arnold*, 3 Sum. 152.; *Dunham* v. *Minard*, 4 Paige 443;
*Bacon* v. *McIntyre*, 8 Met. 86; *Heyer* v. *Pruyn*, 7 Paige Ch.
469; *Higginson* v. *Mein*, 4 Cranch 415; *Collins* v. *Tenney*, 7
Johns. 279, 282; *Bailey* v. *Jackson*, 16 Johns. 214; *Jack-
son* v. *Davis*, 5 Cow. 130; *Howland* v. *Shurtleff*, 2 Met. 26;
2 Hill. on Mort. 4, &c.; Tillinghast's Adams on Eject.;
Stearns on Real Actions.

But we are not prepared to hold that this presumption
arises short of twenty years from the time the mortgage
debt becomes due. Otherwise we might be asked to pre-
sume a debt paid before the stipulated time of payment
had arrived. This presumption arises from the long delay
to enforce payment; but surely no such delay can be
charged until the time has arrived when the creditor is
entitled to demand it. In this respect the presumption
accords with the general provisions of our limitation laws,
which limit suits to the time prescribed, after the cause of
action has accrued. Upon these principles no presumption
of payment exists in this case. When the mortgagee is
in possession, the right of the mortgagor will be barred in
twenty years from the entry, after breach of condition.
2 Story's Eq. Jur., sec. 1028 *a*. So if the mortgagee suf-
fer the mortgagor to remain in possession twenty years
after breach of condition, payment is presumed. Ibid.
1028 *b*; 2 Gr. Cruise 114, note. In both cases the time is

reckoned from the breach of condition. In the first, the mortgagee is entitled usually to the possession upon the execution of the mortgage, and until the debt becomes due the mortgagor cannot by payment entitle himself to enter. He can, of course, then do nothing to interfere with the mortgagee's possession, and until the debt has become due no presumption can arise against him.

The remaining question is in respect to the claim for betterments. To establish this claim it must appear that the suit is for the recovery of real estate, that the defendants and those under whom they claim have been in the actual and peaceable possession for more than six years before suit, and under a supposed legal title, and that improvements were made, &c. As to the length of possession there is here no question. But was it under a supposed legal title? Until January, 1857, the title under which the defendants claim was in Barnes, and the possession in him, as would seem from the case. In respect to him, the evidence tends to show notice of the mortgage, but as it was not passed upon by the jury and the notice found, the court could not be warranted in ruling that there was such notice, unless this evidence was in its nature conclusive, so that the jury could not legally have found otherwise. If Barnes' attempt to make a tender, and his subsequent declarations had been proved or found by the jury, they would show actual notice of the mortgage, and a holding in subordination to it; and this would be wholly inconsistent with a supposed legal title in him; and as the defendants must rely on his possession for a part of the six years, this claim to betterments could not be sustained. But this question not having been submitted to the jury, the testimony in relation to the tender, and the declarations of Barnes, are not to be considered now. The plaintiff's mortgage was, however, recorded, and this, for some purpose, is to be deemed constructive notice, both to Barnes and the defendants. If it applies to cases of this

sort, then the claim to betterments fails as matter of law, and the ruling of the court was correct.

The principle involved here is decided in *Hughes* v. *Edmunds*, 9 Wheat. 489. That was a bill in equity by the mortgagee against the mortgagor and sundry persons to whom he had sold parts of the mortgaged premises, praying that the defendants be decreed to pay the mortgage debt, or that, on failure to pay, the right of redemption be foreclosed, and the premises sold to pay the debt. It appeared that the defendants, other than the mortgagor, had purchased of him parts of the mortgaged land, for a valuable consideration, and without notice, other than the constructive notice given by the registry, and that they had made lasting and valuable improvements on the land, and that the possession had always been in the mortgagor and the defendants claiming under him; and these defendants prayed that the part of the mortgaged lands held by them be held liable only for its value, *without* the improvements they had made.

The court held that the claim of a purchaser with notice, (holding the registry to be such notice) to have the value of such improvements which may have been made from the fruits of the property itself, deducted from the sum for which the whole may be sold, is too unreasonable to admit of a serious argument in its support.

And upon the whole, it is clear, we think, that the mortgagor could set up no claim for betterments, nor could a purchaser of the equity, with notice of the mortgage, be in any better situation in this respect.

If, then, the record is to be deemed sufficient to charge the purchaser with notice, as is held in *Hughes* v. *Edmunds*, it is decisive of the question here, and the defendant's claim must fail.

It is conceded that cases may exist where the tenant is compelled to yield to a superior title by mortgage, and yet be entitled to betterments, notwithstanding the mortgage was duly recorded. But that would be a case where,

in examining the line of title under which the tenant claimed, he would not, even with due diligence, be led to the record of the mortgage title.

But in this case the defendants claim and hold under the mortgagor's title, and due diligence would have led them to the actual knowledge of it. Therefore they are to be charged with that knowledge, and must as to their title stand in the place of their grantor. *Parkhurst* v. *Alexander*, 1 Johns. Ch. 394, and see 1 Story Eq. Jur., sec. 403; *Johnson* v. *Stagg*, 2 Johns. 510, 525. On the general subject of notice see *Potter* v. *Moore*, 32 N. H. 382, and *Hughes* v. *Edmunds*, before cited; *Montgomery* v. *Dorion*, 6 N. H. 250; *Brown* v. *Manter*, 22 N. H. 471. In these cases the relations between the parties are regulated by the conveyance, and the mortgagor may have back his land by paying his debt; otherwise the mortgagee may take it, but he cannot, upon any sound principle, be charged with improvements which the mortgagor has made and sees fit to surrender, rather than pay his debt. As it is with the mortgagor, so it must be with his grantee, having notice of the mortgage. There must, therefore, be

*Judgment on the verdict.*